

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 11, 2020

**By ECF**

Honorable P. Kevin Castel
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    *United States v. Valdez Simmons*, 20 Cr. 294 (PKC)

Dear Judge Castel:

      The Government respectfully submits this letter to request that the Court enter the proposed protective order attached hereto as Exhibit A (the "Proposed Protective Order").  The Government has produced discovery in this case, and is prepared to continue its production.  Given the nature of the discovery material, which consists primarily of internal law enforcement records, the Government believes that a limited protective order should be entered.  The Proposed Protective Order contains provisions identical to those entered in numerous other cases in this district.  Defense counsel has declined to consent to the Proposed Protective Order, informing the Government that it objects to two aspects of the Proposed Protective Order.  Defense counsel had consented to an order containing these provisions in a different case as recently as last month.

      For the reasons set forth below, the Government respectfully requests that the Court enter the Proposed Protective Order.

**I.    Background**

      On June 8, 2020, a grand jury sitting in this District returned a one-count indictment charging the defendant with possession of a firearm by a person who has previously been convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. §§ 922(g)(9) and 2.  The conduct that formed the basis of the indictment involved law enforcement's recovery of a .380 caliber pistol from under a car, a few feet from where the defendant was standing, on or about May 2, 2020.

      Shortly before the defendant's arrest, in the vicinity of the intersection of Mace Avenue and Boston Road in the Bronx, a witness alerted an NYPD officer that "he['s] got a gun," and pointed out the defendant.  The NYPD officer approached the defendant and called for him to stop.  In response, the defendant fled on foot, and the officer pursued.  When the officer caught up to the defendant, the defendant was rising from behind a vehicle in a narrow driveway.  The officer placed the defendant under arrest, and shortly afterward, other NYPD officers recovered a .380

caliber Kel-Tec pistol under the vehicle. The defendant had previously been convicted of misdemeanor assault in the third degree, in violation of New York Penal Law Section 120.001. Records provided by the Monroe County District Attorney's Office show that the defendant shares a child in common with the victim of that assault.

On June 22, 2020, the defendant was arraigned before this Court, and entered a plea of not guilty. On July 1, 2020, the Government began production of discovery to defense counsel. On August 6, 2020, the Government requested the defendant's consent to the Proposed Protective Order. Defense counsel did not object to the need for a protective order, but took issue with the wording of the Proposed Protective Order, as described below.

## II. The Proposed Protective Order

The Proposed Protective Order seeks to limit public access to the discovery material in this case. The key provision in the Proposed Protective Order in this regard is as follows:

> 2. Disclosure material shall not be disclosed by the defendant or defense counsel, including any successor counsel ("the defense") other than as set forth herein, and shall be used by the defense solely for purposes of defending this action. The defense shall not post any disclosure material on any Internet site or network site to which persons other than the parties hereto have access, and shall not disclose any disclosure material to the media or any third party except as set forth below.

Ex. A, ¶ 2.[1]

As discussed in further detail below, this provision is necessary and appropriate, and indeed is regularly included in protective orders in criminal cases in this District. *See, e.g.*, *United States v. Davila*, No. 20 CR 292 (PKC), 2020 WL 3605557, ¶ 5 (S.D.N.Y. July 2, 2020); *United States v. Taveras*, 20 Cr. 240 (PAE), Doc. No. 15, at 2, ¶ 1 (Apr. 30, 2020); *United States v. Thompson*, 19 Cr. 056 (LJL), Doc. No. 26, ¶ 3 (July 30, 2020); *United States v. Young*, 20 Cr. 201 (KMW), Doc. No. 11, ¶ 3 (Apr. 2, 2020); *United States v. Osborne*, 19 Cr. 931 (WHP), Doc. No. 25, ¶ 1 (Mar. 13, 2020); *United States v. Williams*, 20 Cr. 166 (ALC), Doc. No. 8, ¶ 4 (Mar. 4, 2020); *United States v. Martin*, 20 Cr. 136 (NRB), Doc. No. 7, ¶ 4 (Feb. 27, 2020); *United States v. Jeng*, 19 Cr. 800 (VM), Doc. No. 22, ¶ 5 (Jan. 16, 2020); *United States v. Phillips*, 19 Cr. 809 (WHP), Doc. No. 11, ¶ 5 (Dec. 19, 2019); *United States v. El Mokadem*, 19 Cr. 646 (AJN), Doc. No. 16, ¶ 4 (Sept. 11, 2019); *United States v. Luis*, 19 Cr. 484 (KMW), Doc. No. 19, ¶¶ 2, 5 (July 17, 2019).

---

[1] The Proposed Protective Order refers to discovery as "Disclosure Material," which is defined in the Proposed Protective Order as follows: all "documents, objects and information [that the Government has disclosed and will disclose to the defendant] pursuant to Federal Rule of Criminal Procedure 16, [and] 18 U.S.C. §3500," as well as all "exculpatory and impeachment material." Ex. A, ¶ 1. Such Disclosure Material "may include material that (i) affects the privacy and confidentiality of individuals; (ii) would risk prejudicial pretrial publicity if publicly disseminated; and (iii) is not authorized to be disclosed to the public or disclosed beyond that which is necessary for the defense of this criminal case." *Id.*

Last month, defense counsel consented to the entry of such an order in a different case. *United States v. Sanjurjo*, 20 Cr. 316 (ER), Doc. No. 15 (Jul. 14, 2020).

Notably, the Proposed Protective Order contains no limitation on the defendant's or defense counsel's ability to review the discovery or prepare a defense. Nor does the Proposed Protective Order impose any restrictions on how, and in what manner, the discovery can be stored or reviewed that would impact the ability to prepare a defense. Instead, the Proposed Protective Order merely restricts the dissemination of the discovery material to third parties or the media.

### III.   Applicable Law

Federal Rule of Criminal Procedure 16 provides for the entry of a protective order to govern pre-trial discovery in criminal cases. Rule 16 states, in relevant part, that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). The good cause standard "requires courts to balance several interests, including whether dissemination of the discovery materials inflicts hazard to others . . . whether the imposition of the protective order would prejudice the defendant," and "the public's interest in the information." *United States v. Maxwell*, 20 Cr. 330 (AJN), 2020 WL 4431834, at *1 (S.D.N.Y. July 30, 2020). Moreover, in determining whether a protective order is appropriate, "traditional access afforded the documents at issue plays a significant role in this analysis." *United States v. Gangi*, 1998 WL 226196, at *2 (S.D.N.Y. May 4, 1998).

There is no presumptive right of public access to discovery materials exchanged between parties in a criminal case. *See United States v. Smith*, 985 F. Supp. 2d 506, 519 (S.D.N.Y. 2013) ("While protective orders related to judicial documents and criminal proceedings are subject to constitutional and common law scrutiny, protective orders related to discovery are not. This is because experience and logic show that there is no right of access to discovery materials."). Instead, "discovery is a private process between the parties to an action" and "courts generally view the documents or materials shared between them as outside the judicial function and therefore not presumptively accessible." *Id.* (collecting cases).

Significantly, in determining whether there is good cause to issue a protective order, courts "have recognized the pitfalls in allowing unfettered public access to discovery materials," including the risks that the "purpose of the discovery rules—to encourage the disclosure of information and materials to avoid unnecessary surprise and to level the playing field—might be undermined." *Smith*, 985 F. Supp. 2d at 520. Courts in this District have also held that "countervailing law enforcement concerns and the privacy interests of third parties" may justify the issuance of a protective order. *United States v. Kerik*, 07 Cr. 1027 (LAP), 2014 WL 12710346, at *2 (S.D.N.Y. July 23, 2014) (upholding a protective order where discovery contained documents reflecting internal law enforcement investigatory details and tactics that also identified and discussed third parties); *see also Smith*, 985 F. Supp. 2d at 524 ("[C]ourts have recognized that the interests of third parties may justify restrictions on public access to judicial and other documents and materials."); *id.* ("[C]ourts have repeatedly recognized that materials, including even judicial documents which are presumptively accessible, can be kept from the public if their dissemination might adversely affect law enforcement interests[.]") (internal quotation and citation omitted).

Case 1:20-cr-00294-PKC   Document 14   Filed 08/11/20   Page 4 of 6

Page 4

As such, protective orders seeking to restrict public access to discovery materials are commonly used in criminal cases and serve important functions, particularly where, as here, the Government plans to provide the defense with several non-public, confidential law enforcement records. Indeed, "the Supreme Court has held that 'the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect.'" *Id*. at 521 (quoting *Alderman v. United States*, 394 U.S. 165, 185 (1969)).

As set forth below, good cause exists to prevent public access to the discovery material in this case, which, by its very nature, consists of non-public information as to which there is no presumptive right of access.

### IV. Good Cause Exists for the Entry of the Proposed Protective Order

The majority of the Government's discovery in this case is comprised of internal law enforcement records that are not publicly accessible and should not be made public at this early stage of the case. The discovery material includes: (i) several internal NYPD records concerning the defendant's arrest, including officer notes and reports; (ii) NYPD body camera footage of the defendant's arrest; (iii) several internal NYPD reports describing in detail the various investigatory steps taken by law enforcement after the defendant's arrest, including internal requests for DNA analysis and firearms testing, and the reports generated as a result of those analyses; and (iv) internal criminal history reports of the defendant.

The documents described above are not publicly available, and for good reason: legitimate societal interests exist in maintaining the confidentiality of law enforcement records during ongoing investigations and, as particularly relevant here, during the pendency of an ongoing prosecution. Indeed, public disclosure of these documents would cause specific harm to law enforcement interests, since it would risk revealing details about internal investigatory steps undertaken by the NYPD and the internal reports generated in connection with arrests and investigations. *See, e.g.*, *Kerik*, 2014 WL at \*2 (finding good cause for a protective order where law enforcement interests may be impacted by public disclosure of documents). Moreover, as set forth above, these internal law enforcements documents are not ones as to which "public access traditionally has been afforded." *See Gangi*, 1998 WL at \*2 (granting a protective order that prevented public access to an internal prosecution memorandum, in part, because it was "not a document to which public access traditionally has been afforded").

To be sure, this is not a complex case resulting from a sprawling, long-term investigation. But the need to safeguard the integrity of law enforcement's investigation and this ongoing federal prosecution—including the non-public records exchanged during the initial phases of the case—is compelling. Without the Proposed Protective Order, there would be nothing to prevent the defense from providing these non-public law enforcement records to a third party or the media. Nor would there be anything to prevent the defense or others from being required to provide these materials to a third party in response to a subpoena. And while the burden rests with the Government to demonstrate good cause, the Government expects that the defense will be unable to articulate any justification for permitting public access to these internal law enforcement records at this early stage of the case. *See, e.g.*, *Kerik*, 2014 WL 12710346, at \*2

(finding no basis to vacate a protective order where, in part, "public interest in [the discovery documents] is not weighty").

Moreover, the discovery material contains information that impacts the privacy rights of individuals. The discovery includes names and tax ID numbers for various law enforcement officers and analysts involved in investigating the defendant's case, a body camera recording that captures the face and voice of a civilian witness, and other information that directly implicates the privacy rights of third parties. There can be no question that public disclosure of the discovery materials would thus impact the privacy rights of these individuals. Good cause therefore exists to enter the limited protective order sought here, which seeks to protect the confidentiality of law enforcement records, the privacy rights of individuals, and other information that is not otherwise authorized to be disclosed to the public or beyond that which is necessary for the defense of this case.

Finally, the Proposed Protective Order does not impede the defense's efforts to prepare a defense in any way. It imposes no restrictions on the defendant's ability to review the discovery on his own. It also gives defense counsel broad authority to disclose discovery material to other persons involved in preparing a defense and to use such discovery for purposes of defending this action. *See, e.g.*, Ex. A, ¶ 3. The Proposed Protective Order simply seeks to ensure that defense counsel and defendant cannot, at this early stage of the case, publish discovery material on public websites or to the media in a manner that unscrupulously reveals or provides third parties with unnecessary access to personal or private information; confidential law enforcement reports; and/or other nonpublic records. The Proposed Protective Order balances the need to protect these interests while permitting the Government to expeditiously produce all discovery material in this case. It will also provide defense counsel and the defendant with prompt access to those materials, which will facilitate the preparation of their defense.

Defense counsel has informed the Government that the defense takes issue with two aspects of the Proposed Protective Order. First, defense counsel objects that the Proposed Protective Order does not specifically name the defendant in the section setting forth certain parties to whom defense counsel may disclose discovery material. Ex. A, ¶ 3. Second, defense counsel contends that the proposed order should not apply to potential *Brady/Giglio* material in advance of disclosure of that material, and should not require the eventual return or destruction of *Brady/Giglio* material that did not originally belong to the defendant.

These objections are unavailing. First, the Proposed Protective Order allows the defendant to receive all discovery, because the discovery materials are expressly disclosed "to the defendant" Ex. A, ¶ 1. The proposed order in no way bars defense counsel from discussing or sending discovery materials to the defendant. Second, the privacy interests of third parties are no less important simply because they appear in documents that could be classified as *Brady/Giglio* material. Again, the defense has full access to these materials, so the Proposed Order does not impede the defense's efforts to prepare a defense. Research has not revealed a single instance of a court refusing to institute a protective order on the grounds defense counsel raises.

\* \* \*

## V. Conclusion

For the foregoing reasons, the Government submits that good cause exists to issue the Proposed Protective Order attached hereto as Exhibit A.

                Respectfully submitted,

                AUDREY STRAUSS
                Acting United States Attorney

By:   /s/ T. Josiah Pertz
       T. Josiah Pertz
       Assistant United States Attorney
       Southern District of New York
       (914) 933-1966
       timothy.pertz@usdoj.gov

cc:  Robert Baum, Esq.